

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

*970 Broad Street, 7th floor*  973-645-2700
*Newark, New Jersey 07102*

September 19, 2025

**Via ECF**

Hon. André M. Espinosa
United States Magistrate Judge
Martin Luther King, Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:    *United States v. Treva Edwards*, Crim. No. 25-266 (MCA)

Dear Judge Espinosa:

     The United States submits this letter in opposition to the request for pre-trial release pursuant to 18 U.S.C. § 3142 submitted by the defendant, Treva Edwards ("Edwards"). Edwards is a dangerous purported "prophet" who claims to speak to God and coerces members of his congregation through fear of violence and death, sleep deprivation, starvation, social isolation, and sexual violence into forced labor to benefit himself and amass further control over his followers. He has continued to intimidate and control victims of his offenses even while detained at Essex County Correctional Facility. Releasing him on any conditions would cause serious harm to the community, including likely intimidation of victims. Edwards fails to rebut the presumption that he should be detained, and the 18 U.S.C. § 3142(g) factors all weigh in favor of continued detention. The United States respectfully requests that the Court deny Edwards's request for bail.

## BACKGROUND

     On April 25, 2025, Edwards was charged by a sealed Indictment with one count of conspiracy to commit forced labor, along with his wife Christine Edwards, in violation of 18 U.S.C. § 1594(b), one substantive count of forced labor that includes aggravated sexual abuse, in violation of 18 U.S.C. § 1589(a) and (d), and one count of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(1) and (b)(1). The Indictment contains several particularized allegations regarding Count One, which establish the object, manner and means, and conduct in furtherance of the conspiracy.

     On May 7, 2025, Edwards and his wife and codefendant were arrested. On May 8, 2025, they appeared before Your Honor for an initial appearance and

arraignment on the charges in the Indictment. Edwards entered a plea of not guilty and consented to detention at that time. ECF No. 8. Christine Edwards argued for release but was also detained pending an appropriate bail package.[1] *Id.*

A consent protective order was entered by Judge Arleo on June 24, 2025, to allow the Government to more efficiently produce discovery of sensitive material. ECF No. 25. On July 1, 2025, the Court entered a scheduling order signed by all parties, which set a deadline for the Government's production of Rule 16 discovery of July 25, 2025. ECF No. 26. On July 22, 2025, the parties agreed to adjust the schedule, and the Court entered an amended scheduling order on July 31, 2025, extending the Rule 16 discovery deadline to September 5, 2025, and the defendants' pretrial motions deadline to November 14, 2025. ECF No. 28.

On September 8, 2025, Edwards filed a motion requesting release to home detention and proposing three possible third-party custodians. ECF No. 30. On September 16, 2025, Your Honor entered a text order setting the Government's deadline to respond to the bail motion for September 19, 2025. ECF No. 31.

## **ARGUMENT**

The Court should deny bail. Under the Bail Reform Act of 1984, federal courts consider two criteria when making determinations of release or detention: (1) risk of flight and (2) safety to the community. 18 U.S.C. § 3142(f). When making a determination regarding the eligibility of a defendant for pretrial release, the Bail Reform Act directs the Court to consider: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Edwards concedes that a rebuttable presumption arises here that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id.* § 3142(e)(3)(D). Additionally, the Bail Reform Act contemplates that detention may be appropriate in a case that involves a serious risk that a person will attempt to obstruct justice, or attempt to threaten, injure, or intimidate a prospective witness. *Id.* § 3142(f)(2)(B).

Edwards cannot rebut the presumption of detention for his human trafficking charges, namely because he poses a serious risk to the safety of the community. The defense motion asks the Court to adopt an incorrect standard of dangerousness. The defense argues that "verbal communications, with no history of violence, are insufficient to warrant pretrial detention." Mot. 4. Not so. Verbal communications that cause physical harm to others, including fear and mental anguish, endanger other persons and the community. For example, many violent crimes involve

---

[1] Christine Edwards was later released with conditions of home detention on June 9, 2025. ECF No. 22.

threatened physical harm to others, such as robberies, even if no firearm or weapon is otherwise displayed. Defendants have been detained in cases involving sex trafficking (even when not involving prostitution). *See* Memorandum & Order at 15-16, *United States v. Raniere*, No. 1:18-cr-00204-NGG, ECF No. 46 (E.D.N.Y. June 20, 2018) (noting the seriousness of charges concerning a coercive organization when critics "faced harassment"); *see also id.* ECF No. 222 (denying second motion for pretrial release and noting, in the context of a dangerousness analysis, allegations that Raniere had "psychologically abused DOS members"). Even crimes that do not involve any application of force can be dangerous to others. *United States v. Patel*, No. CR 20-MJ-14001 (ZNQ), 2020 WL 1698785, at *7 (D.N.J. Apr. 8, 2020) (finding that during a time of economic uncertainty "the risk and ease at which Defendant could resume his participation in the alleged fraud presents a clear and immediate danger to the public"). Here, there is clear and convincing evidence that Edwards engages in direct threats of physical violence (including actual completed sexual violence) as well as more nuanced forms of dangerous control over others that do harm, such as coerced forced labor, starvation, and sleep deprivation. Analysis of the facts under the 3142(g) factors demonstrates that the Court must continue to detain Edwards to ensure the safety of the community and victims.

1.   Nature and Circumstances of the Offense

The Indictment charges Edwards with leading a cult by enforcing strict rules based on violent threats and coercive control. He used that control to extract labor from its members to benefit himself. Edwards is not merely a pastor who engaged in some forced labor as a small part of his church's operations—the entire organization of Jesus is Lord by the Holy Ghost ("JLHG") was based around total control by Edwards as a "Prophet" who claimed to speak directly to God, asserted that his prosperity would please God, and threatened to ask God to punish non-compliant JLHG members. Crucially, followers ultimately came to believe that any misfortune Edwards experienced was due to their misbehavior, and that they should be punished accordingly. If Edwards is released, the evidence overwhelmingly suggests that he will punish church members for his indictment, arrest, and detention.

All three counts in the Indictment are based on unlawful coercion of victims. A gun need not be put to someone's head for coercion to be threatening, dangerous, and unlawful. Edwards threatened physical harm to his victims, whether by his own hand or by an act of God, if they did not obey his demands that they perform menial labor and provide the profits to him. When members were insufficiently obedient—or at times, seemingly just to assert his control, or demonstrate his dislike for certain members—Edwards socially isolated them by excluding them from shared worship in JLHG's "sanctuary" and encouraging other members to shun them. Edwards restricted their food; multiple former members reported to the Government that they lost startling amounts of weight. He also deprived members of sleep by waking them up at all hours to work or pray and required members to receive permission to leave the JLHG building or communicate with outsiders (including family members).

As alleged in Count Three, for some victims, the coercion took the form of sexual exploitation.[2] Over multiple years, Edwards used physical force to rape at least one of the members of his organization. He held her down, clamped his legs over her so that she could not escape, penetrated her even when she said that it caused her pain, and forced her to "receive God's spirit" in the form of his bodily fluids even when doing so made her physically ill. He eventually demanded that she undergo an abortion when she became pregnant with his child.

The threat of spiritual retribution haunted Edwards's victims in JLHG. Edwards took advantage of vulnerable people desperately searching for leadership and salvation due to difficult personal circumstances such as drug addiction, lack of family support, or previous sexual victimization. Edwards convinced his followers that he could speak directly to God, and that God could punish them—including with physical harm—if they displeased Edwards. Followers earnestly believed Edwards when he told them that even harboring disobedient thoughts would cause God to bring foul weather, smite them with physical ailments like leprosy, make them insane, imprison them, or cause them to commit suicide.

Even those women who were members of JLHG but not subjected to Edwards's sexual assaults were bombarded with misogynistic, sexually charged threats that they would become "sex slaves." Edwards claimed repeatedly that God hated women, that women were possessed by promiscuous spirits, and that women were meant to serve the men in the organization, including him.

Specifically, Edwards used his threats to further the forced labor scheme, because he would tell members that God would "beat" them into submission and that they would be required to perform hard labor. He then assigned more work, including work at late hours, to members who were not in his favor.

Finally, Edwards used the threats and coercion described above to trap members within the organization and prevent them from leaving. Members believed that if they disobeyed Edwards by leaving, they would lose what little food, sleep, work, and social interaction they had been permitted by him. Edwards turned members against each other and encouraged harsh ridicule of those who were not in his favor or who were considering leaving JLHG. Further, Edwards threatened members with pain, homelessness, and death—all imposed by God—if they left. Though hard to understand for those outside of JLHG, leaving the "church" became unthinkable. Members lived in a tightly restrictive environment, created and controlled by Edwards and his wife. Edwards did not need to "use force" or "hold a gun to Victim 1's head," Mot. 4, to gain obedience. Edwards took advantage of his membership's trust and faith in him, and used violent, abusive, and manipulative rhetoric to compel their labor for years. To them, Edwards's threats were very real.

---

[2] After Edwards's arrest, the Government has continued to investigate sex crimes by Edwards, and has found evidence that he has sexually exploited at least one other member of his congregation, including by using force, fraud, and coercion.

Members of victims' families referred to JLHG as a "cult" that trapped their loved ones. Edwards's threats caused real harm to the victims, who years later continue to struggle with the traumas they experienced at his hands.

2.      Weight of the Evidence

The allegations described above are corroborated by reports from multiple witnesses, text messages, emails, invoices, bank records, photographs, contemporaneous handwritten notes, and audio recordings.[3] A cursory review of the discovery produced to the defendant would reveal that the allegations do not "rise and fall on the testimony of Victim 1." Mot. 5. For example, the Government has provided the full affidavits of all of the search warrants related to the investigation, which summarize the corroborative evidence showing that Edwards coerced and abused Victim 1, Victim 2, and other members. That many current members remain loyal to Edwards is not an indication of weakness in the Government's case but instead evidence of the continued danger Edwards poses. Edwards continues to exert immense power over those victims who remain trapped in his organization, which he continues to control through loyal members even while he remains detained in Essex County Correctional Facility.

Below are only a few of the coercive messages Edwards sent to JLHG members while he was at liberty:

- In a series of emails to multiple JLHG members, Edwards wrote: "AS LONG AS THERE IS HARD LABOR THE WOMEN ARE NOT REPENTING BUT PLAYING GAMES WIT[H] GOD)!!!" He then continued: "WOMEN ARE THE ONES WHO WILL CURSE GOD AND DIE!!! . . . IT'S IN MY HEART TO SET THE MEN FREE AND WORK THE HELL OUT OF THE WOMEN ALL NIGHT, ALL THE TIME, LAND CANNOT BE CLEANSE[D] OF THE BLOOD TILL YOU JUDGE THE WOMEN)!!!!!!!?!??!?"[4]

- In a group text message he wrote: "THOSE OF YOU WILL CONTINUE TO WORK HARD AND BE A SLAVE WIT SLAVE SALARIESSSS."

- In another text message he threatened to withhold food: "WATCH GOD FUCKKKKKKKK UP EVERY WRONG AND TROUBLING SPIRIT NOWWWW!!!!... IN JESUS NAME!!!!... AND NO DINNER TONIGHT AND FASTING FOR EVERY WRONG SPIRIT!!!!!"

---

[3]     The Government anticipates providing a sample of this evidence to the Court and defense counsel prior to the bail hearing.

[4]     The Government modified some punctuation and spelling of these messages for readability. The original messages can be made available separately.

Other messages show that Edwards frequently instructed members to wake up or stay awake into the early morning to pray, and criticized those with a "sleepy spirit." Similarly, he restricted food from those who were not in his favor, under the guise of "fasting" and criticism of a "gluttonous spirit." Finally, messages between Victim 1 and Edwards corroborate the sexual assault allegations. Edwards would refer to his rapes of Victim 1 as her opportunity to "receive" the spirit of God. During the time that Victim 1 was a member of JLHG, Edwards sent text messages to her at unusual hours, instructing her to be alone and prepare to "receive." Records from an abortion clinic also corroborate that she was forced to undergo an abortion at Edwards's instruction.

More recently, the investigation found evidence that the forced labor continued well after Victim 1 and Victim 2 had escaped from JLHG. Earlier this year, law enforcement agents photographed Edwards in the parking lot of JLHG instructing members to load into vans along with cleaning equipment, deliveries of furniture, and other indicia of manual labor. Text messages from Edwards's phone in the weeks prior to his arrest show that he was continuing to orchestrate manual labor and receive the funds in cash and checks, which members were expected to document by sending him photographs and "accounts." He demanded that information in the name of God.

Perhaps most concerning, Edwards encouraged members to contemplate suicide and threatened that God would cause members to become mentally ill and kill themselves. Notebooks recovered from the JLHG property on the day of Edwards's arrest appear to contain handwritten notes taken by members, including current members, during Edwards's preaching. These notes contain references to God causing harm to them, and to their contemplation of suicide. Text messages between Edwards and one of these members state that the member "prayed to die repeatedly."

3. History and Characteristics of the Defendant

Edwards's history and characteristics weigh against his release. He has maintained control of JLHG for over a decade in the self-appointed role of "prophet." Based on emails and text messages reviewed by the prosecution team, Edwards has no social contacts, employment, or life activities outside of his leadership of JLHG. His entire life is built around coercing members of JLHG to serve him and coordinating the work of his members to generate income for him and his wife and co-defendant. Over these years, Edwards likely has victimized dozens of people. As of the day of his arrest, Edwards was actively texting a group of ten current members.[5] There is no reason to expect that Edwards could suddenly change his life if released and avoid contact with JLHG's current and former members.

---

[5] Those receiving these text messages included Tamara Borden, a proposed third-party custodian, and her husband Josh Borden, as discussed further below.

Edwards's character is demonstrably one of selfishness and manipulation. Even when he engages in acts of apparent charity, he does so with ulterior motives of maintaining control. For example, multiple former members have reported that Edwards would accept donations of used furniture, clothing, or other items under the guise of providing them to impoverished members of the community. In reality, Edwards would require JLHG members to pick up the donations and store them in the JLHG location or storage units rented by JLHG so that they could later be sold for profit to further enrich Edwards.

Edwards has no other discernible source of income other than the forced labor scheme he operates through JLHG. Though he has no criminal history in recent years, the Indictment alleges that he has been continuing a pattern of harmful behavior for a long period of time. This is not a crime that is an aberration in an otherwise law-abiding life. To the contrary, the Indictment demonstrates that Edwards has built a life almost entirely based upon crime by manipulating and coercing others to benefit himself. As described below, it appears that Edwards has continued to perpetrate the scheme from jail through current members of JLHG. That Edwards convinced his cellmate, who has pleaded guilty and is pending sentencing in an unrelated federal case, to write a letter in which the cellmate confesses to criminal activity is further evidence of Edwards's ability to control those around him to their detriment if it benefits himself.

4.  Nature and Seriousness of Danger

The nature of the conduct, the weight of the evidence, and the history and characteristics of Edwards clearly demonstrate the danger posed by releasing Edwards. As explained in more detail below, Edwards has already been continuing to communicate with members from jail, and would no doubt significantly ramp up his control over JLHG, including through threats and intimidation, were he released. Release under any set of conditions would present Edwards with the opportunity to communicate in person, via phone, or via proxies with victims. The Government has already learned through its investigation that Edwards would often use favored JLHG members as proxies to make his wishes known to the rest of the JLHG group. In fact, since the unsealing of the Indictment and arrest of Edwards, current JLHG members have been contacting former members and attempting to glean information about the identity of the victims.[6]

Edwards already has indicated an interest in witness intimidation on recorded jail calls, including with his codefendant wife, who was ordered not to communicate with Edwards about the case. On August 13, 2025, Edwards told his wife that God would be "punishing others while I'm in this situation . . . he's beating their conscience

---

[6] Immediately after Edwards' arrest, a JLHG member texted other current members, "SHUT EVERYTHING THE FUCK DOWN NOW . . . PROPHET GOT ARRESTED BY HOMELAND SECURITY," and instructed other members "Do not come back to the building. Homeland security is questioning everyone."

and saying, 'see what you caused?'" Later the same day, he said that "the case is not even difficult, we just need total obedience," in an apparent reference to controlling the JLHG members and preventing them from speaking to law enforcement.

While detained, Edwards has been in frequent and repeated contact with a long-time JLHG member, whom we understand to be a favored member who sometimes had authority to issue commands on behalf of Edwards. A few hours after Edwards's arrest, this member sent a message to a group of JLHG members instructing them to repent and blaming them for "NOT WATCHING/PRAYING/FASTING/OR SEEKING GOD LIKE PROPHET ALWAYS DECLARED!!!!" Since then, this JLHG member appears to be attempting to continue the forced labor scheme while Edwards is detained, and Edwards appears to use coded language to check on the progress of work projects. This member refers to Edwards as "Dad," although she is not his biological daughter. She told Edwards in May that she was "taking care of everything." When asked by Edwards about money, she responded "I can't go into too much detail on that but what's done is done, don't worry about anything." On May 30, 2025, Edwards asked this member about coordinating a call with the rest of the JLHG members so that he could speak with the entire group.

The Government's continuing investigation has found that after Edwards's arrest, this JLHG member, and other current members of JLHG, have spoken to clients about continuing to work and receive payments for cleaning and demolition services—the very labor that Edwards coerced from JLHG members. The member also mentioned to one such client that the group believed they could identify the victims who complained to the Government.

The Court should have no confidence in any of the proposed third-party custodians being able to prevent this continued criminal conduct. Each of the third-party custodians has either directly participated in the activities of JLHG, has witnessed the criminal conduct, or is connected via close family bonds to a victim or witness of the conduct. We will briefly discuss each in turn, and can share further information, including supporting documentation, at the bail hearing:

Option 1: Natasha Logan-Williams

- Logan-Williams had a business relationship with JLHG and appeared to frequently benefit from the forced labor provided by JLHG members. The Government has reviewed text messages and emails in which Logan-Williams requested workers be sent to her restaurant, and messages from Edwards ordering JLHG members to go there to work and report back on the amount of money received. On one occasion in March of this year, law enforcement agents saw Edwards and a JLHG member picking up materials from Logan-Williams's restaurant and loading them into a rented van, which is consistent with the forced labor

activity alleged in the Indictment. Text messages from Edwards show that he coerced members to perform this work for Logan-Williams.[7] Accordingly, Logan-Williams is not neutral to the allegations in the case and would be an inappropriate third-party custodian.

- Furthermore, releasing Edwards in the New Jersey area, within a short distance of the JLHG location, would give him the opportunity to interact with members (even if in violation of bail conditions), and allow him to continue to coerce members to continue the scheme. His communications would not be monitored, and we anticipate that even if his use of electronic devices were restricted, that he could use Logan-Williams or JLHG members to communicate with the JLHG group by proxy.

Option 2: Tamara Borden

- Tamara Borden and her husband Josh Borden were both members of JLHG in that they would receive group text messages that Edwards sent to the larger group. Both appear to remain loyal to Edwards. For example, they received coercive and threatening communications from Edwards in group text message threads with other JLHG members within the last year and up until Edwards's arrest, including the following:

    o December 23, 2024: "JOSHUA . . . THE DEVIL'S PLANNING TO GET RID OF THE FOLKS . . . JOSHUA . . . DON'T WANT THEM TO MAKE IT . . . FUCKKK THEM . . . IN JESUS NAME AMEN. THEY KNOW WHAT THE FUCKKK TIME IT IS . . . GOD'S GONNA KILL THESE MOTHER FUCKERSSS . . . WIT[H] WORKKK AND LABORRR . . . IN JESUS NAME AMEN."

    o December 23, 2024: "THEY SAID IT'S GONNA SNOW TOMORROW AGAIN . . . THAT SHOULD DO IT . . . FREEZE YOUR DUMB ASS TO DEATH . . ."

    o December 23, 2024: "I SEE GOD GETTING RID OF YOU . . . LIKE FOOLISH [Former JLHG Member 1] AND [Former JLHG Member 2] AND THEM . . . IN JESUS NAME AMEN."

- Josh Borden has been speaking to Edwards on recorded calls on a nearly daily basis since his arrest. Tamara Borden had been speaking with

---

[7] In one message regarding Logan-Williams, Edwards wrote "LET THE WOMEN GET READY TO GO HELP TASHA NOWWW... WIT DISHES... WE WILL MEET DOWNSTAIRS... BE LUCKY AND BE PRIVELEGED [sic].. HE ASK YOU TO DO SOMETHING... HE REALLY WANT TO DESTROY YOU LIKE THE CHILDREN OF ISRAEL...."

- 9 -

Christine Edwards when she was detained as well. For example, on June 2, 2025, Christine Edwards and Tamara Borden used cryptic language to discuss moving items and "getting money owed."

- Tamara Borden and Josh Borden contacted former members of JLHG after Edwards's arrest and seemed to inquire about the former members' knowledge of reports to law enforcement regarding the allegations in the Indictment. And Josh Borden remains so devoted to Edwards that he is willing to move out of his own home for months.

- Given Tamara Borden's close contact with former and current members of JLHG, she would likely serve as a proxy for Edwards to continue to communicate with members, influence them, and continue his crimes.

Option 3: Joan Noel

- Joan Noel's daughters, Edwards's nieces, were formerly members of JLHG for many years. The Government has evidence, including in the form of electronic communications, that Ms. Noel's daughters were victimized by Edwards during their time in JLHG by being coerced into performing labor and turning over legitimate wages to Edwards.

- Accordingly, Ms. Noel has direct knowledge of the impact Edwards had on her family, and she is at best closely related to direct witnesses of Edwards's crimes. Though we do not believe that Ms. Noel's daughters live with her, allowing her to become a third-party custodian for Edwards would risk undue pressure on the witnesses, or allow Edwards to use Ms. Noel to coerce, intimidate, or pressure those witnesses.

- In any case, just like the other third-party custodians, Ms. Noel could not adequately supervise Edwards and ensure that he would not make unmonitored communications with JLHG members to continue his coercive scheme, considering the complexity of her relationship with him and his victims. Even if there were no risk of undue influence upon Ms. Noel's daughters, she could not adequately monitor and control his communications with other current or former members, which he is already doing while detained.

For all of the reasons above, the Government has demonstrated by clear and convincing evidence that Edwards would pose a threat to the safety of former members of JLHG and to the community if he were released on any conditions. Additionally, Edwards has not overcome the presumption of detention. The Court should order that he continue to be detained pending trial.

Very truly yours,

TODD BLANCHE
United States Deputy Attorney General

ALINA HABBA
Acting United States Attorney
Special Attorney

By: Trevor A. Chenoweth
Susan Millenky
Assistant U.S. Attorney

HARMEET DHILLON
ASSISTANT ATTORNEY GENERAL

  /s/ Francisco Zornosa
Francisco Zornosa
Trial Attorney
Human Trafficking Prosecution Unit

U.S. Department of Justice

cc:    Rahul Agarwal, Esq.

- 11 -